IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
CAROLYN BENFORD,                )
                                )
          Plaintiff,            )
                                )
     v.                         )    No. 11 C 4
                                )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,             )
                                )
          Defendant.            )
```

MEMORANDUM OPINION AND ORDER

Carolyn Benford ("Benford") seeks judicial review pursuant to Social Security Act ("Act") §405(g)[1] of the final decision of Commissioner of Social Security Michael Astrue ("Commissioner") that denied Benford's claim for supplemental security income ("SSI") disability benefits and disability insurance benefits ("Benefits"). Both parties have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and Benford has alternatively moved to remand for further proceedings. For the reasons stated here, both Rule 56 motions are denied, but Benford's alternative motion to remand is granted.

**Standard of Review and Applicable Law**

This Court reviews the decision of Administrative Law Judge ("ALJ") Robert Asbille as Commissioner's final decision,

---

[1] Further statutory references will take the form "Section --," using the Title 42 numbering rather than the Act's internal numbering. All 20 C.F.R. references are cited "Reg. § --." Lastly, citations to Benford's memorandum take the form "B. Mem. --."

reviewing the legal conclusions de novo (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). Because by contrast factual determinations receive deferential review, courts may not "reweigh the evidence or substitute [their] own judgment for that of the ALJ" and will affirm Commissioner's decision "if it is supported by substantial evidence" (id.). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Richardson v. Perales, 402 U.S. 389, 401 (1971)(internal quotation marks and citations omitted)).

As cases such as Haynes, 416 F.3d at 626 (internal quotation marks and citations omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion [but] need not...provide a complete written evaluation of every piece of testimony and evidence.

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009)). Reversal is also required if the ALJ has committed a legal error, regardless of how much evidence supports his or her determination (Binion on behalf of Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)).

To qualify for benefits a claimant must be "disabled" within the meaning of the Act (Liskowitz v. Astrue, 559 F.3d 736, 739 (7th Cir. 2009), citing Section 423(a)(1)(E)). "Disability" is defined in Section 423(d)(1)(A) as an "inability to engage in any

2

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Claimants must also demonstrate that the disability arose during the period when they were insured (Section 423(a)(1)(A) and (c)(1)).

Social Security regulations set forth a sequential, five-step inquiry that must be conducted to determine whether a claimant satisfies this definition (Liskowitz, 559 F.3d at 740, citing Reg. §§404.1520 and 416.920). Specifically, the ALJ must determine (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), citing Reg. §404.1520):

> (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.

**Procedural Background**

Benford filed applications for SSI and Benefits on May 23, 2007 alleging disability beginning December 1, 2006 (R. 16). Her claims were denied initially on July 27, 2007 and then on reconsideration on November 13, 2007 (id.). Benford requested a hearing, which the ALJ held on July 9, 2009 (id.), resulting in the issuance of an adverse decision on September 29 of that year (id. 16-22). On November 6, 2009 Benford requested review, and

the Social Security Administration Appeals Council denied his request on September 24, 2010 (id. 5-8). Benford now seeks judicial review.

## Factual Background

**Benford's Testimony**

Benford was born on December 23, 1957 (and thus was 51 years old at the time of the hearing). She is a mother of three adult children, but she lives alone in Chicago (R. 30-31, 294). She has a host of medical complaints, including anemia, hypertension, sinusitis, acid reflux, dysphagia (an ailment relating to improper swallowing) and lumbar radiculopathy (id. 45-47, 375). She also experiences dizziness and numbness in her toes (id. 50, 397).

During a September 2007 emergency room visit Benford complained of severe back pain that made standing and walking difficult and caused her to wake up at night with tingling and numbness (R. 44, 47). During that visit her doctor diagnosed her with lumbar radiculopathy (id. 44). In 2009 she was prescribed medication for her back pain (which she could not afford) and underwent an MRI that revealed a spinal bulge (id. 43-44).

Benford testified that she had chronic back pain (id. 37) that prevented her from standing for more than two hours out of an eight hour day (id. 51). She also could not sit or stand for more than a half hour at a time (id. 42). In her previous job as

4

a machine operator on an assembly line, she was required to stand for 12 hour shifts (id. 51-52). In her view her inability to do so led to her termination (id. 52-53).

Benford admitted that she was able to perform light housework (not including sweeping, mopping or vacuuming), but she requires that her daughters shop for her and do her laundry (id. 38-39). Most of the day she lies in bed and watches TV (id. 41).

**Medical Testimony**

Dr. David Cugell reviewed Benford's medical records from 2007 (R. 54). [2] He believed that the severity of her complaints did "not correspond with objective evidence" and that the "minor abnormality" detected in connection with her back x-rays and MRI did not explain her professed limitations in mobility (id.). Benford had a "reasonably good range of motion" in 2007, and based on the available medical records "[h]er impairments were considered nonsevere" (id.). In response to a question posed by the ALJ, Dr. Cugell remarked that in his opinion Benford was capable of light work (id. 55).

ALJ Asbille asked Dr. Cugell in regard to Benford's lumbar radiculopathy whether it would be preferable that she be treated by a specialist such as a neurologist or orthopedist, and Dr.

---

[2] More recent records were missing at that time. Benford's attorney produced those more recent records after the hearing. Dr. Cugell then reviewed them and supplemented his opinion by letter (R. 462).

Cugell responded in the affirmative (id.). That question led to a colloquy between the ALJ and the doctor regarding her lumbar radiculopathy diagnosis that resulted in pain radiating down Benford's leg. Dr. Cugell said that he wouldn't normally expect the pain resulting from such a condition to be as severe as Benford was suggesting (id. 58). After the hearing and on receipt of more up-to-date medical records (see n.2), Dr. Cugell stated in a letter to the ALJ that Benford had no severe physical impairments and that there were "no objective findings to justify the imposition of any specific or particular exertion limits" (462).

**Vocational Expert**

ALJ Asbille asked vocational expert Richard Fisher ("Fisher") whether, if it were assumed that Benford could stand and walk six out of eight hours with a "sit stand option," she could "return to her past relevant work" (R. 59). Fisher replied that Benford could indeed perform her previous job of production assembler, as she was capable of "light work" (id. 60). In Fisher's opinion Benford could also work as a fast food worker, dishwasher and silverware wrapper (id. 60-61). ALJ Asbille then asked what jobs Benford could perform if she was limited to sedentary work with a "sit stand option," and Fisher responded that she could be a hand packager, surveillance system monitor or tube operator (id. 61).

**ALJ Asbille's Opinion**

As indicated earlier, on September 29, 2009 ALJ Asbille rendered his opinion ruling that Benford was ineligible for SSI and Benefits because she was not disabled under the meaning of the Act (R. 16-22). ALJ Asbille first noted that Benford had only one severe impairment (lumbar radiculopathy), for he rejected the contention that diabetes and high blood pressure constituted severe impairments (id. 18-19). ALJ Asbille also remarked that he took Benford's obesity into account while assessing the severity of her impairments (id. 19).

As to Benford's lumbar radiculopathy, ALJ Asbille found that it did not meet or equal any listing (id.), and he then described Benford's residual functional capacity as the ability (id.):

> to perform light work...except that the claimant is limited to standing and walking 6 hours out of an 8-hour work day with a sit/stand option. Additionally, the claimant is able to sit for 6 hours out of an 8-hour work day, but only can perform occasional postural movements, such as bending, stooping, crawling, and crouching.

In connection with that finding, the ALJ remarked that while Benford's impairments could "reasonably be expected to cause the alleged symptoms," her statements about "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (id. 20). ALJ Asbille later noted Dr. Cugell's observation that Benford's complaints

7

"[did] not correspond to the medical evidence" (id. 21).

In addition, the ALJ addressed the medical records of one of Benford's treating physicians (id. 20-21)(citations to exhibits omitted)):

> The claimant, however, did undergo an MRI of her lumbar spine, which demonstrated only a small central disc protrusion at L4-L5 without significant stenosis. Additionally, Dr. Abdel examined the claimant and noted that she did not display any visible signs of musculoskeletal defects, which would indicate a back impairment. At that time, Dr. Abdel also noted that the claimant's gait, ambulation, mobility, manipulation, and motor strength were all within normal limits. The claimant also reported experiencing numbness in her legs and arms, and dizziness.

ALJ Asbille went on to note that after Benford reported weakness in her right leg "several times per week" in 2007, she was referred to a neurologist who performed an electromyography exam that confirmed her lumbar radiculopathy (id. 21). Despite that diagnosis, the ALJ found that Benford was capable of performing her past work with the above-listed restrictions (id. 22).

**Failure To Analyze Listed Disability**

Benford first contends that the ALJ erred in failing to consider whether she meets, medically equals or functionally equals Listing 1.04, Disorder of the Spine (B. Mem. 5). Here is all the ALJ said in concluding that Benford did not have a listed impairment that meets or equals a listing (R. 19):

8

> First,[3] the claimant's lumbar radiculopathy does not meet/equal listings in section 1.00 (musculoskeletal system) because there is no evidence of major dysfunction of a joint, disorder of the spine, or any of the specific neurological deficits required under this section.

Although Benford's ailment is surely a "disorder of the spine" under the Reg. Pt. 404, Subpt. P, App. 1 definition, something more is required for that disorder to satisfy Listing 1.04. To that end such a disorder must be accompanied by (id.):

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

On that score the problem faced by the ALJ's conclusion is that Benford at least arguably exhibited the requisite symptoms. That is, she had pain that radiated down her leg, muscle weakness and frequent bouts of numbness.[4] And while she did not have a "positive straight-leg raising test," that is only because no

---

[3] [Footnote by this Court] By convention it would be expected that "First" would be followed by the familiar sequence of ordinals "Second" and "Third." But the ALJ did not adhere to that convention here, for the sentence introduced by "First" is the only one in that section of the opinion.

[4] B. Mem. 7 n.1 points to the definition of "lumbar radiculopathy" found on the Emory University Health Sciences Center website (http://www.emoryhealthcare.org/spine/medical-conditions/lumbar-radiculopathy.html):

> Lumbar radiculopathy is typically caused by a compression of the spinal nerve root. This causes pain in the leg rather than in the lumbar spine, which is called 'referred pain.'

test was ordered or performed.

This opinion should not be misunderstood as calling for a finding that Benford has a listed disability. Rather the purpose behind this brief discussion is twofold: It puts to rest any contention that the ALJ's conclusion was nonetheless supported by "substantial evidence,"[5] and it illustrates how extraordinary it is that the ALJ reached his (very possibly incorrect) finding with no analysis at all. Whether Benford actually has a listed disability and is thus presumptively disabled is instead an important question left to be answered by the ALJ upon remand.[6]

**Additional Errors**

This opinion could end on that note, for the ALJ's major failure to analyze whether Benford had a listed impairment would compel remand on its own. But Benford has identified two additional (and related) shortfalls in the ALJ's opinion that are worthy of comment. First, she takes issue with the ALJ's residual functional capacity assessment that she could stand or walk for six out of eight hours (R. 19), even though she

---

[5] Even if as Commissioner contends the ALJ's determination could arguably be viewed as supported by "substantial evidence," such a retrospective justification is nothing more than an attempt to defend the decision on grounds that were never articulated in the proceedings below.

[6] Our Court of Appeals has repeatedly held that errors in evaluating whether a claimant's ailment meets or equals a listed impairment are grounds for remand (see, e.g., Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004) and cases cited there).

10

testified that she could only stand for two out of eight hours. Second, she argues that the ALJ made an improper credibility determination.

Those two asserted errors are of course related, in that the ALJ's residual functional capacity assessment was based (at least in part) on its determination that Benford's complaints were not credible. Here is how the ALJ evaluated Benford's credibility (R. 20):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

It is entirely circular to say that Benford's statements are not credible because they are inconsistent with the residual functional capacity assessment--an assessment that was in turn sought to be based on the rejection, on credibility grounds, of Benford's statements as to her limitations. That is exactly the type of "meaningless boilerplate" that such cases as Parker v. Astrue, 597 F.3d 920, 921-22 (7th Cir. 2010) have criticized.

Elsewhere in the opinion the ALJ makes the point that Benford's statements regarding her limitations lacked objective medical evidence. But analysis shows that explanation to be more than problematic as well.

For one thing, "the ALJ may not discredit a claimant's

11

testimony about her pain and limitations solely because there is no objective medical evidence supporting it" (Villano, 556 F.3d at 562). In this case the ALJ's assertion that there is no objective medical evidence is flat-out wrong. Remember that the ALJ himself found that Benford had a severe impairment that was in fact supported by objective medical evidence--her diagnosis of lumbar radiculopathy (R. 21). And the ALJ further found that the impairment would "reasonably be expected to cause the alleged symptoms" (id. 20). Given those predicate findings, based as they are on specific medical tests, any such summary rejection of Benford's testimony as to her pain and limitations immediately raises a red flag.[7]

That rejection is even more troubling when pain is at issue, for a person's subjective experience of pain is notoriously hard to gauge from the outside. As Johnson v. Barnhart, 449 F.3d 804, 806 (7th Cir. 2006)(citations and internal quotation marks omitted, brackets in original) explains:

> Even when as in this case the claimant attributes her pain to a physical rather than a psychological cause, the administrative law judge cannot disbelieve her testimony solely because it seems in excess of the "objective" medical testimony. The etiology of pain is not so well understood, or people's pain thresholds so

---

[7] Similarly, the ALJ's adverse credibility assessment relies at least in part on Dr. Cugell's finding that Benford's complaints were not borne out by the "objective evidence" (R. 22). But such reliance is itself odd (and unexplained), given that the ALJ rejected Dr. Cugell's opinion that Benford did not even have a severe impediment.

12

uniform, that the severity of pain experienced by a given individual can be "read off" from a medical report. [P]ain is a complex, multidimensional, subjective experience. The report of pain is related to numerous variables, such as cultural background, past experience, the meaning of the situation, personality variables, attention, arousal level, emotions, and reinforcement contingencies. [T]here is often a poor relationship between the "subjective" experience of pain and "objective" or external referents. This may be most evident in the case of chronic pain where apparently similar peripheral pathology, injury, or nociceptive input [pain stimulus] can result in markedly different presentations. Whereas patient self-report, using verbal analogue or other rating scales, is perhaps the most straightforward and appropriate means of determining pain severity (or other aspects of the pain experience), this is prone to response bias like all self-reports.

Recall once again the often-repeated emphasis on an ALJ's responsibility "to build a logical bridge between the facts of the case and the outcome" (Parker, 597 F.3d at 921). Here the ALJ plainly failed to do so.

## Conclusion

Due to ALJ Asbille's complete failure to evaluate whether Benford's back injury meets or equals a listing, the decision is remanded to the Social Security Administration for further proceedings. Upon remand whatever ALJ is assigned to the case[8]

---

[8] Another frequently repeated message from our Court of Appeals is that consideration should be given to whether a case should be referred to a different ALJ under the circumstances that call for a remand. That is of course Commissioner's decision, but that has not deterred the courts from making the suggestion in light of the troubling records of some ALJs (this Court hastens to add that it has had no prior occasion to review a decision by ALJ Asbille).

should also address the additional deficiencies discussed in this opinion.  Accordingly, this Court denies both parties' motions for summary judgment, but it grants Benford's motion to the extent that it requests in the alternative that the case be remanded for further proceedings.

_____
Milton I. Shadur
Senior United States District Judge

Date:  September 20, 2011